# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| **BENISA WOOLFORD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action File No:** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **HIGHGATE HOTELS, L.P.,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiff Benisa Woolford ("Woolford" or "Plaintiff") brings this action for relief and damages against Defendant Highgate Hotels, L.P. ("Highgate Hotels" or "Defendant") based on the following allegations and causes of action:

## NATURE OF THE ACTION

1

1. This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C.A. § 2000*e*-2(a)(1), to correct unlawful employment practices based on Plaintiff's sex, and the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 *et seq*. Plaintiff alleges that Defendant discriminated against her based on her sex by terminating her due to her status as a pregnant woman. Plaintiff further alleges a claim for interference and retaliation under the FMLA. Plaintiff seeks economic compensatory damages including back pay, front pay, lost benefits; non-economic compensatory damages; punitive damages; as well as attorneys' fees and costs of litigation. Plaintiff also petitions the court for injunctive and declaratory relief, including reinstatement to a comparable position with commensurate benefits.

## THE PARTIES

2. Plaintiff Woolford is a resident of the state of Georgia. During the time of the events alleged in this complaint, Woolford was employed by Defendant as the General Manager at its hotel property referred to as the Residence Inn Atlanta Downtown.

3. Woolford is an eligible employee within the meaning of the FMLA. She had been employed by the property Defendant acquired for more than 12 months and worked more than 1,250 hours in the 12 months preceding the health condition for which she was entitled to receive leave. 29 U.S.C.A. § 2611(2)(a)(i)-(ii).

4. Highgate Hotels is an international hospitality management company that does business in the state of Georgia.

5. Highgate Hotels is an employer as defined by the FMLA. 29 U.S.C.A. § 2611(4)(A)(i).

**SUBJECT MATTER JURISDICTION AND VENUE**

6. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§1331 and 1343.

7. Venue is proper in this district and division under 28 U.S.C.A. §1391 as Defendant conducts business in, and the alleged unlawful acts occurred in, this district and division.

## PERSONAL JURISDICTION

8. Defendant may be served with process concerning this civil action, in accordance with Fed. R. Civ P. Rule 4.

9. Defendant may be served with process concerning this civil action through its registered agent on record with the Georgia Secretary of State Corporations Division: Cogency Global Inc., 900 Roswell Lakes Parkway, Suite 310, Roswell, Georgia 30076.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Woolford filed a charge of discrimination against Highgate Hotels with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2021-04757, on May 12, 2021. A copy is attached as Exhibit A.

11. Woolford subsequently received a Right to Sue letter from the EEOC on September 29, 2021. A copy is attached as Exhibit B.

12. Plaintiff timely files this action within 90 days of the issuance of a Right to Sue Letter.

13. All administrative remedies have been satisfied prior to the filing of this civil action.

## FACTUAL ALLEGATIONS

14. Woolford has had a lengthy, successful career in the hospitality industry and during the past fourteen years, has held management-level positions at Marriott hotel properties in several large American cities, including Salt Lake City, Richmond, Los Angeles, and Atlanta.

15. In November 2020, Woolford was named General Manager of the Residence Inn Atlanta Downtown. This property has long been recognized as one of Marriott's flagship franchises in the metro Atlanta area.

16. A portfolio of hotels including Marriott was acquired by Highgate Hotels, an international hospitality management company, in the spring of 2021. The property, managed by Woolford, has continued to operate under the Residence Inn by Marriott brand name.

17. In April 2021, David Mahan, the Vice President of Operations for Highgate Hotels, made a site visit to the Residence Inn Atlanta Downtown and held a series of planning sessions with Woolford. Mahan discussed with her the company's goals for marketing, boosting occupancy rates in the aftermath of the COVID-19 pandemic, and returning to adequate staffing after attrition related to the slowdown in hotel business in 2020 due to the coronavirus.

18. Mahan expressed his view that Woolford had all the necessary tools to rise within Highgate Hotels, and even discussed with Woolford the prospect of promoting her to one of several upcoming openings for regional general manager positions.

19. During their sessions together, Mahan expressed no concerns whatsoever about Woolford's management skills or job performance. Nor did he identify any meaningful issues about the Residence Inn Atlanta Downtown. Woolford left the meetings enthusiastic about Highgate Hotels and her future in the company.

20. Woolford, who was seven months pregnant at the time of Mahan's visit, shared with him that it was her intent to take an extended FMLA leave during the summer after her child's birth. Mahan did not suggest in any manner that Woolford's projected leave would pose any business issues for the hotel. As Woolford knew, Marriott makes it a regular personnel practice to rotate in interim managers if there are temporary vacancies and Mahan did not indicate that Highgate Hotels would be any less efficient.

21. On April 29, 2021, Woolford applied simultaneously for FMLA leave and short-term disability leave under Highgate Hotel policies. She emailed her application to the HR department and copied Mahan.

22. Four days later, on May 3, 2021, Woolford was sent an invitation to a video call with Mahan. To her surprise, Vice President of Human Resources Diana Mills was present during the call as well.

23. Woolford was abruptly told by Mahan and Mills that she was being immediately terminated and that she was to depart the property immediately after the call. Mahan stated that the reason for the firing was his "feeling" that the

Residence Inn Woolford managed needed a new direction and his observation during the March 2021 visit that she did not seem sufficiently "connected" to her staff.

24. Woolford knew that during the earlier site visit, Mahan's interactions were largely with her one on one, with virtually no opportunity for him to engage with the staff or see her engaging with staff members. She also recalled Mahan openly discussing her role in the hotel's future and the prospects of a promotion. Based on Mahan's statements to her when they met a few months earlier, Woolford firmly expected she would be part of any new direction going forward.

25. Woolford knew that sudden terminations of managers in the Marriott system were reserved for misconduct or impropriety concerns. As a longtime manager, she was aware of Marriott's traditional policy of progressive discipline regarding performance issues, meaning that a series of corrective steps were to be taken, with termination as an eventual option only if earlier measures failed to improve performance.

26. Prior to the May 3 call, Woolford had no reason whatsoever to believe Highgate Hotels had any concerns about her job performance.

27. HR Vice President Mills instructed Woolford that her firing would be converted into a resignation with three weeks of severance and two months of continuing insurance provided she agreed to a waiver of any claims and a no-rehire clause. Woolford rejected the offer, which she saw as trivial given her track record of strong performance for Marriott.

28. Woolford also knew that no-rehire clauses at Marriott properties had traditionally been limited to rare circumstances such as improprieties, which made the demand that she accept a no-rehire clause particularly offensive.

29. At no point during the ownership transition process was Woolford informed that Highgate Hotel had changed the Marriott policies regarding progressive discipline or rehiring.

30. Woolford was the primary source of income for her household, and her abrupt firing with no warning caused her to experience an immediate crisis. She was forced to seek emergency medical attention for what turned out to be

elevated blood pressure, a dangerous condition for a woman in the final months of pregnancy.

31. Woolford was entitled under the FMLA's provisions to take up to 12 weeks of job-protected leave for the birth of a child and to bond with her newborn. 29 U.S.C.A. § 2612(a)(1).

32. Marriott company policies traditionally permit new mothers to take short-term disability so that they receive a substantial amount of their salary while they are on FMLA leave. Highgate Hotels has never notified or informed its employees that it has altered or changed this policy.

33. Highgate Hotels, rather than provide Woolford the leave to which she was entitled under the FMLA as well as its own short-term disability plan, terminated her without warning.

34. Woolford's termination has caused her substantial professional damage, and she has been unable to find employment at a level comparable to her previous position despite her lengthy track record of success in the industry. Her firing by a well-known force in the hospitality industry, and the implication that

she failed leading a flagship property, has contributed to her continuing unemployment.

## COUNT I
### (Sex discrimination in violation of Title VII )

35. Plaintiff Woolford incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

36. Defendant Highgate Hotels' termination of Woolford was motivated by her sex, in that she was terminated because of or on the basis of pregnancy or childbirth. 42 U.S.C.A. § 2000e(k).

37. As a result of Highgate Hotels' intentional discrimination based on her sex, Woolford has suffered monetary damages including but not limited to back pay and front pay; the loss of benefits; and non-economic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

38. Highgate Hotels' discriminatory conduct was in reckless disregard of her rights under Title VII, and she is therefore entitled to recover punitive damages.

## COUNT II

### (Interference with FMLA leave)

39. Plaintiff Woolford incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

40. Woolford was an eligible employee of an FMLA-defined employer.

41. Highgate Hotels interfered with Woolford's FMLA rights by terminating her rather than permitting her to take 12 weeks of job-protected leave related to her pregnancy and the care of her newborn.

42. Highgate Hotels prevented Woolford from exercising the rights provided to her by the FMLA.

43. As a result of Highgate Hotels' interference with her rights under the FMLA, Woolford has been deprived of wages, health insurance, savings contributions, retirement benefits, and other benefits.

44. Woolford is entitled to equitable and monetary relief, including back pay, front pay, reinstatement, attorneys' fees, and costs of litigation. 29 U.S.CA. § 2617 (a)(1)(A)-(B).

45. Woolford is also entitled to liquidated damages for Highgate Hotels' willful interference with her rights under the FMLA. 29 U.S.CA. § 2617(a)(1)(A)(iii).

## COUNT III

### (Retaliation in violation of the FMLA)

46. Plaintiff Woolford incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

47. Woolford was an eligible employee of an FMLA-defined employer.

48. After Woolford engaged in protected activity under the FMLA by attempting to exercise her rights to take leave under the FMLA, Highgate Hotels retaliated against her by terminating her.

49. Highgate Hotels' retaliatory conduct violated the FMLA. 29 U.S.CA. § 2615(a)(2).

50. As a result of Highgate Hotels' retaliatory conduct, Woolford has been deprived of wages, health insurance, savings contributions, retirement benefits, and other benefits.

51. Woolford is entitled to equitable and monetary relief, including back pay, front pay, reinstatement, attorneys' fees, and costs of litigation. 29 U.S.CA. § 2617 (a)(1)(A)-(B).

52. Woolford is also entitled to liquidated damages for Highgate Hotels' willful violation of her rights under the FMLA. 29 U.S.CA. § 2617 (a)(1)(A)(iii).

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that all of the following relief be granted:

A. Back pay, front pay, and lost benefits.

B. Compensatory damages to the extent allowed by law.

C. Punitive damages.

D. Liquidated damages.

E. Attorneys' fees and costs of litigation.

F. Pre-judgment and post-judgment interest at the highest lawful rate.

G. Such other equitable and monetary relief as the Court deems just and proper, including reinstatement.

H. A declaratory judgment that Highgate Hotels' actions violated Woolford's rights under Title VII and the FMLA.

Respectfully submitted, this 13th day of October 2021.

**HKM Employment Attorneys LLP**
*s/Artur Davis*
Artur Davis[1]
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com
Jermaine "Jay" Walker
3355 Lenox Rd. NE, Suite 705
Atlanta, GA 30326
jwalker@hkm.com
Direct: 404-301-4020

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Davis is licensed in the state of Alabama and the District of Columbia.